UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

*************************************************************************
                                          *
In Re:                                    *
                                          *Case No.: 10-27041-WIL
PAUL E. IRABOR                            *Chapter 7
                                          *
                Debtor.                   *
                                          *
*************************************************************************

DEBTOR'S REPLY TO TRUSTEE'S OPPOSITION TO DEBTOR'S MOTION TO
DISMISS CASE

NOW COMES Debor Paul E. Irabor, through the undersigned counsel, and respectfully replies to the Trustee's opposition by stating that out of the $41,058.89 the Trustee claims that was "discovered" in the Debtor's account with Wachovia Bank, $40,588 of that amount does not belong to the Debtor.  In support of this reply the Debtor states the following:

1. The Debtor's wife, who is not a party in this bankruptcy petition, helps her friends and extended family members purchase goods on sale.  Specifically, these people give the Debtor's wife money, which she uses to purchase for them, goods that are going on sale and then she will ship the goods to them. [1]

2. Because the Debtor's wife was getting money from these people, she asked her husband to use his Wachovia's account to deposit the funds.

3. Thus, the Debtor opened a separate checking account with Wachovia[2], in which his wife deposits these funds that she receives from people outside the USA that

_____
[1] Please see Exhibit 1  (An affidavit from Ms. Linda Irabor).
[2] Please note that the Debtor has two checking account with Wachovia.  One was specifically designated for his wife to use for all monies that she receives from the people that wanted her to buy goods for them.  It does not make sense for the Debtor to have two checking accounts with the same  bank if it is not the

wanted her to purchase good for her in the USA.[3]   Also, some of these people deposited directly into the Debtor's checking account with the Debtor's wife's instructions, which she later use to purchase goods on sales for them.

4.   The Debtor's account with the $41,058.89 does not have any checking book or debit card.  The Debtor purposely did not request those services because he knew that those funds that will be depositing in that account will not belong to him, but it is for his wife to use for the owners.  His wife will just transfer the funds from this account only when she needs the funds to purchase the goods and ship them as instructed by her friends and extended family members.

5.   Similarly, the Debtor's wife uses the Debtor's e-mail to communicate with these people that always send her funds to buy goods on sale for them.[4] Even though the chain e-mails have the Debtor's e-mail address, by reading the contents of the e-mails, a reasonable person would infer that the discussion in the e-mails are between Linda Irabor, the Debtor's wife, and some people instructing her about goods they want her to purchase for them.  In the e-mails "Auntie Mi" was a reference to Ms. Linda Irabor.  Also, in some other e-mail chains, the writer would just address the Debtor's wife as "Linda".[5]  The total amount in the account that was deposited directly by Ms. Linda Irabor that she received from people who want her to buy goods on sale for them was $11,188.

intent fro him to separate his funds from the funds meant for his wife to use to purchase goods for the owners of the funds.
[3] Please see exhibit 2 (Debtor's affidavit)
[4] Please see exhibit 2
[5] Please see exhibit 3 and 4.  (Chain-emails regarding the discussion about goods to be purchased ).

6.  Also, one Ms. Cassandra Palmer deposited a total of $27,000 in the Debtor's account for the Debtor's wife to use to buy some goods for her.[6] Ms. Palmer made two separate deposits, one with cashier check from SECU Credit Union in the amount of $12,000.00 on May 25, 2010[7] and another cashier check in the amount of $15,000.00 on April 30, 2010.[8] These funds were not a loan, payments or gifts to the Debtor. Rather they were for the Debtor's wife to use to purchase goods on sale for Ms. Palmer.

7.  Further, on July 7, 2010, one Ms. Lyna Vanjah entrusted $2400 in the care of the Debtor for safekeeping. This fund was not a payment, loan or a gift to the Debtor. Rather, Ms. Vanjah entrusted the funds to the Debtor to avoid her spending the money while she was preparing for her exam.[9]

8.  The $500 reported in the Debtor's Schedule B is an estimated average balance of the amount the Debtor can consider as his assets in all the three accounts he has with Wachovia Bank, contrary to what the Trustee is trying to insinuate that the Debtor filed the motion to dismiss because amount in the excess of $41,000 was "discovered" in his Wachovia account.

9.  The purported "discovered" excess funds reported by Wachovia to the Trustee and the filing of the motion to dismiss was coincidence. The alleged "discovery" did not influence the Debtor's decision to dismiss the petition in any way or form.

10. Wherefore, the Debtor requests this court to grant his Motion as stated in the Motion.

---

[6] Please see exhibit 6 (Ms. Palmer's affidavit)
[7] Please see exhibit 7 (Copy of the cashier's check)

[8] Please see exhibit 8
[9] Please see exhibit 5 (Ms. Lyna Vanjah's affidavit)

Respectfully submitted,

**<u>August 11, 2010</u>**

/s/G. Emeka Onwezi                        .
G. Emeka Onwezi
4601 Presidents Drive, Suite 145
Lanham, Maryland 20706
(301) 358-6018